UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------------x

RASHID WALKER,

                Petitioner,

                                        **MEMORANDUM & ORDER**

        v.                               10-CV-5558 (PKC)

WARDEN HAROLD D. GRAHAM,

                Respondent.

----------------------------------------------------------------x

PAMELA K. CHEN, United States District Judge:

        Petitioner Rashid Walker, appearing *pro se*, seeks a writ of habeas corpus pursuant to 28 U.S.C. § 2254.

        The petition now is before the Court following initial review by Chief Judge Carol B. Amon, to whom the petition originally was assigned.  Upon her review pursuant to Rule 4 of the Rules Governing Section 2254 Cases, on December 17, 2010, Judge Amon ordered Walker to show cause why the petition was not time-barred by the applicable one-year statute of limitations established by the Antiterrorism and Effective Death Penalty Act ("AEDPA").  Dkt. 3; *see* 28 U.S.C. § 2244.  Walker responded thereto on January 14, 2011, purporting to set forth the reasons why equitable tolling applied to excuse the untimely filing of his petition.  Dkt. 4. Following Walker's submission, Judge Amon ordered Respondent to show cause why a writ of habeas corpus should not issue.  Dkt. 5.  Respondent submitted a response on May 2, 2011 (Dkt. 6), and Walker submitted a reply in further support of his petition on June 6, 2011.  Dkt. 11. Because Walker indicated that he needed more time to conduct the necessary legal research (Dkt.

12), Judge Amon permitted Walker to submit an additional reply in further support of his petition, which Walker submitted on August 2, 2011. Dkt. 13.

Upon review of the record and the submissions of the parties, the Court concludes that the petition must be dismissed as time-barred. However, even were the petition not time-barred, Walker's claims are without merit. Therefore, for the reasons set forth below, the petition is denied in its entirety.

## BACKGROUND

At Walker's state court trial, it was established that in the early morning hours of February 8, 2003, Walker and an acquaintance, Sean Mattis, got into a fight with a group of people at a nightclub in Brooklyn. Following the altercation, Walker and Mattis left the club, retrieved firearms from a vehicle, approached the nightclub, and fired their weapons indiscriminately into the club's entrance. As a result, Chantel Bailey was killed, and four other patrons were seriously wounded. Dkt. 6 at 2.[1]

Walker, who was tried with Mattis before two different juries,[2] presented no evidence at trial, but contested the state's evidence by, *inter alia*, challenging the introduction and accuracy of testimony regarding Walker's pretrial statements (*see, e.g.*, Dkt. 8-2 at 77–85, 92–93), the accuracy of prosecution expert witness testimony (*see, e.g.*, Dkt. 9-2 at 567–68, 580), and arguing in summation that the prosecution had not met its burden and that its evidence was not reliable. *See, e.g.*, Dkt. 9-3 at 630–61.

On January 31, 2005, the jury found Walker guilty of one count of Murder in the Second Degree (N.Y. Penal Law § 125.25[2]), two counts of Assault in the First Degree (N.Y. Penal

---

[1] Because Walker was convicted, the Court recites relevant facts in the light most favorable to the verdict. *See Garbutt v. Conway*, 668 F.3d 79, 80 (2d Cir. 2012).
[2] Separate juries were used because each defendant intended to offer evidence that was irrelevant and potentially prejudicial to the other defendant. *See* Dkt. 7-3 at ECF 104.

Law § 120.10[3]), one count of Criminal Possession of a Weapon in the Second Degree (N.Y. Penal Law § 265.03[2]), and two counts of Assault in the Third Degree (N.Y. Penal Law § 120.00[2]).

On February 10, 2005, Walker was sentenced to: (1) an indeterminate term of 25 years to life for second-degree murder, to run consecutively with (2) two consecutive determinate terms of 25 years for the two first-degree assault counts, (3) a determinate term of 15 years for criminal weapon possession, and (4) two one-year determinate terms of imprisonment on the third-degree assault counts. Dkt. 6 at 3.

Walker appealed his conviction, and the Appellate Division, Second Department unanimously affirmed the judgment. *People v. Walker*, 45 A.D.3d 878 (2d Dep't 2007). The New York Court of Appeals denied leave to appeal on February 26, 2008. *People v. Walker*, 10 N.Y.3d 772 (2008). Walker's conviction became final 90 days later, on May 26, 2008, when time expired for Walker to seek a writ of certiorari from the United States Supreme Court. *See* Dkt. 3; *Williams v. Artuz*, 237 F.3d 147, 150 (2d Cir. 2001) ("[A] petitioner's conviction bec[omes] final for [AEDPA] purposes when his time to seek direct review in the United States Supreme Court by writ of certiorari expire[s].") (internal quotations omitted). Thus, Walker, under AEDPA, had 365 days from May 26, 2008, to seek a writ of habeas corpus in federal court.

On January 30, 2009, Walker applied to the Appellate Division for a writ of error *coram nobis* to vacate his conviction, arguing that his appellate counsel failed to properly raise his *Brady* and *Rosario* claims, and therefore he was denied effective assistance of appellate counsel in violation of the Sixth Amendment. Dkt. 6 at 4. The Appellate Division denied the application

on June 9, 2009, finding that Walker failed to establish that his appellate counsel was ineffective. *People v. Walker*, 63 A.D.3d 864 (2d Dep't 2009).[3]

On June 22, 2009, Walker moved pursuant to New York Criminal Procedure Law § 440.20 in the New York Supreme Court to set aside his sentence (the "440 Motion").  Dkt. 6 at 4. Walker moved on the basis that the imposition of consecutive sentences violated the constitution under *Apprendi v. New Jersey*, 530 U.S. 466 (2000), because the facts necessary to impose consecutive sentences were determined by the judge, not the jury.  Dkt. 6 at 4.  The New York Supreme Court denied the motion on the merits on October 16, 2009, on the basis that the petition was procedurally barred because Walker already had sought relief regarding the same issue on direct appeal.  Dkt. 6 at 4.

On November 17, 2009, Walker moved for leave to appeal the trial court's denial of the 440 Motion to the Appellate Division.  Dkt. 4 at 2.  The Appellate Division denied Walker leave to appeal on June 2, 2010.  Dkt. 4 at 2; *People v. Walker*, Case No. 2010-00276, 2010 WL 2197330 (2d Dep't June 2, 2010).  On June 14, 2010, Walker sought leave to appeal the denial of

---

[3] Walker claims that after the Appellate Division denied the *coram nobis* application, he filed an unspecified application to the New York Court of Appeals on June 21, 2009.  Dkt. 4 at 1. Walker claims he never "heard back," so he submitted a motion pursuant to New York Criminal Procedure Law § 440 to the New York Supreme Court on June 22, 2009, *the very next day*.  Dkt. 4 at 1–2.  First, it makes no sense that Walker would have abandoned his purported application to the Court of Appeals only one day after he filed it.  Second, the record does not reflect such a filing with the Court of Appeals.  Importantly, was this application an appeal of the Appellate Division's denial of his *coram nobis* petition, the Court has found no decision or other order of the Court of Appeals regarding the disposition of such an appeal.  Respondent affirms that Walker "did not seek leave to appeal to the New York Court of Appeals from the denial of his application for a writ of error *coram nobis*."  Dkt. 6 at ECF 8.  The Court has confirmed with the clerk of the Court of Appeals that it has no record that such an application ever was filed. Therefore, the Court finds that Walker did not appeal to the Court of Appeals the Appellate Division's denial of his *coram nobis* petition.

the 440 Motion to the New York Court of Appeals.  The New York Court of Appeals denied leave to appeal on July 7, 2010.  *See People v. Walker*, 15 N.Y.3d 779 (2010).[4]

On November 29, 2010—917 days after May 26, 2008—Walker submitted the instant petition for a writ of habeas corpus.  Dkt. 1.  As discussed below, because only 488 days within that time period were tolled for purposes of AEDPA, Walker's petition was filed 429 days after May 26, 2008, *i.e.*, 64 days past the AEDPA one-year time limit.

*DISCUSSION*

At the outset, the Court is mindful of its obligation to construe *pro se* pleadings "to raise the strongest arguments that they suggest, *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 474 (2d Cir. 2006) (emphasis omitted), and that "a pro se complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 51 U.S. 89, 94 (2007).

I.   *Timeliness*

AEDPA sets a one-year limitation period for the filing of a petition for a writ of habeas corpus by a person in custody pursuant to a state court conviction.  28 U.S.C. § 2254(d)(1).  The applicable one-year period runs from the date on which one of the following four events occurs, whichever is the latest:

> (A)    the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;

> (B)    the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;

---

[4] Again, as discussed further, *infra*, the Court of Appeals' denial of Walker's motion for leave to appeal largely is irrelevant for purposes of determining whether this petition was filed timely, because such an appeal does not exist under New York law.

> (C)     the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or
>
> (D)     the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

28 U.S.C. § 2244.  Subsection (A) governs the time limit for the filing of the instant petition. According to subsection (A), the one-year period within which Walker had to file a habeas petition began running on May 26, 2008, which was when the time expired for him to seek from the United States Supreme Court review of the denial of his direct appeal.

  a.   *Statutory Tolling*

Importantly, 28 U.S.C. § 2244(d)(2) provides that "[t]he time during which a *properly filed* application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is *pending* shall not be counted toward any period or limitation under this subsection."  *Id.* (emphases added).  In other words, the limitation period is tolled by statute during the pendency of any properly filed application for state post-conviction or other collateral review, such as a 440 Motion.  Accordingly, such time does not count towards the one-year limitation period within which to file a petition for habeas relief.

The Second Circuit addressed what constitutes a "properly filed" and "pending" application under 28 U.S.C. § 2244(d)(2) in *Hizbullahankhamon v. Walker*, 255 F.3d 65 (2d Cir. 2001).  There, the court reaffirmed its prior holding that "properly filed" simply means "an application for state post-conviction relief recognized as such under governing state procedures." *Id.* at 70 (citing *Bennett v. Artuz*, 199 F.3d 116, 123 (2d Cir. 1999)).  In *Bennett*, the Second Circuit held that "a state-court petition [for post-conviction or other collateral review] is 'pending' from the time it is first filed until finally disposed of and further appellate review is

unavailable under the particular state's procedures.'" *Id.* (citing *Bennett*, 199 F.3d at 120). Therefore, a "properly filed" application for state review ceases to be "pending," and thus the running of the limitation period commences or re-commences, when no further appellate review of the application is available.

Here, the one-year limitation period was tolled during the pendency of Walker's direct appeal. It also was tolled during the pendency of his *coram nobis* petition[5], because those were "properly filed" applications for state review which were "pending" until no further review was available. *See* 28 U.S.C. § 2244(d)(2). The limitation period also was tolled during the pendency of Walker's 440 Motion before the trial court and for leave to appeal the denial thereof to the Appellate Division. However, the limitation period was *not* tolled during the pendency of Walker's motion for leave to appeal to the Court of Appeals the Appellate Division's denial of leave to appeal the 440 Motion, because no such appeals are permitted under New York law.

New York Criminal Procedure Law § 450.90 sets forth the instances in which appeals to the Court of Appeals are authorized. New York courts have held that there is no statutory authority in N.Y.C.P.L. § 450.90 or elsewhere providing that Appellate Division denials of leave to appeal are reviewable by the Court of Appeals. "No appeal lies from an order denying a

---

[5] Although the Second Circuit has not yet decided this issue, the Court assumes for purposes of Walker's petition that the limitations period also was tolled during the 13 days between the Appellate Division's denial of Walker's *coram nobis* petition and the filing of Walker's 440 Motion. In *Saunders v. Senkowski*, 587 F.3d 543 (2d Cir. 2009) the Second Circuit held that "a § 440.10 motion is 'pending' for purposes of AEDPA at least from the time it is filed through the time in which the petitioner could file an application for a certificate for leave to appeal the Appellate Division's denial of the motion." *Id.* at 548 (citing *Bennett*, 199 F.3d at 120). *Bennett* was decided before the New York legislature authorized the appeal of denials of *coram nobis* petitions. Although the Second Circuit has yet to address whether the limitation period is tolled during the 30-day period in which the denial of a *coram nobis* petition is appealable, the reasoning of *Bennett* and *Saunders* suggests that AEDPA's one-year limitation period is tolled during the period "in which the petitioner could file an application for a certificate for leave to appeal" the denial of a *coram nobis* petition.

motion for leave to appeal to this court." *People v. Williams*, 342 N.Y.S.2d 75 (2d Dep't 1973); *see also People v. James*, 206 A.D.2d 243, 244 (1st Dep't 1994) (holding that "[t]here is simply no statutory authority in our criminal procedure for review by the Court of Appeals of an Appellate Division order refusing permission to appeal to this Court" and noting that "[v]irtually all the cases citing this rule have involved applications under [N.Y.C.P.L. § 450.90].")[6]

Here, the order from which Walker sought leave to appeal to the Court of Appeals, viz., the Appellate Division's denial of leave to appeal the New York Supreme Court's denial of the 440 Motion, was not appealable to the Court of Appeals.  The 440 Motion ceased to be "pending" under 28 U.S.C. § 2244(d)(2) once the Appellate Division denied leave to appeal, because that denial foreclosed further state appellate review of the subject claims.  *See Hizbullahankhamon*,  255 F.3d at 67–68.  Therefore, the time from the Appellate Division's denial of leave to appeal to the filing of the instant petition was not tolled.  "[O]nce the Appellate Division denied [Walker] leave to appeal the denial of his section 440[] motion, he had reached 'the end of the road within the state system'" and the clock resumed running on the one-year limitation period.  *Klein*, 667 F.2d at 283–84 (citing *United States ex rel. Graham v. Mancusi*, 457 F.2d 463, 467 (2d Cir. 1972)); *see Hizbullahankhamon*, 255 F.3d at 69–72 ("Because review of an Appellate Division order denying a motion for a writ of *coram nobis* is unavailable in the New York Court of Appeals, the Court of Appeals has no opportunity to resolve any

---

[6] As noted by the Second Circuit, the New York Court of Appeals has not spoken on this issue directly.  *Klein v. Harris*, 667 F.2d 274, 284 n.6 (2d Cir. 1981).  However, there is no indication that the Court of Appeals would interpret N.Y.C.P.L. § 450.90 in a manner conflicting with the Appellate Division's holding in *Williams* or *James*.  *See id.*  Likewise, the parties point to no decision of the Court of Appeals or to any other evidence suggesting that the Court of Appeals would hold otherwise.

constitutional issues raised in such a doomed appeal.") (internal citations and quotation marks omitted).[7]

Nothing else statutorily tolled the running of the one-year limitation period. Therefore, the amount of time that elapsed between Walker's conviction becoming final and the filing of the instant petition can be calculated as follows: (1) 249 days between May 26, 2008, when Walker's conviction became final, and January 30, 2009, the date on which Walker filed his *coram nobis* petition; and (2) 180 days between June 2, 2010, the date on which the Appellate Division denied Walker leave to appeal the denial of his 440 Motion, and November 29, 2010, the date on which this petition was filed. Hence, the amount of untolled time attributable to Walker for purposes of applying the AEDPA one-year time limit is 429 days, which is 64 days late.[8] Walker's petition, therefore, is untimely and must be dismissed as time-barred, unless the Court determines that the limitation period should be equitably tolled.

### b. Equitable Tolling

Walker concedes that his petition is untimely unless equitable tolling applies to excuse his failure to submit a timely application. *See* Dkt. 1 at 14–14b. The one-year limitation period may be equitably tolled under appropriate circumstances where "extend[ing] the statute of

---

[7] It should be noted that, after *Hizbullahankhamon* was decided, the New York legislature authorized the appeal of *coram nobis* petitions to the Court of Appeals. *See Saunders v. Senkowski*, 587 F.3d 543, 548 n.1 (2d Cir. 2009). That is of no moment to Walker's case, however, because at issue here is the permissibility of appeals of denials of leave to appeal, which still are not permitted in New York.

[8] Although the New York Court of Appeals denied Walker's motion for leave to appeal the denial of his 440 Motion to that court on July 7, 2010, that decision effectively was a nullity, because no such leave to appeal exists. *See People v. Williams*, 342 N.Y.S.2d 75 (2d Dep't 1973). However, even were it the case that AEDPA's one-year limitation period *was* tolled during the pendency of Walker's motion for leave to appeal the denial of his 440 Motion to the Court of Appeals, his petition still would be untimely. This time period amounted to 35 days. Therefore, even if that appeal was deemed "properly filed" and "pending" during that period, Walker's petition still would be untimely by 29 days.

limitations beyond the time of expiration [is] necessary to avoid inequitable circumstances."
*Valverde v. Stinson*, 224 F.3d 129, 133 (2d Cir. 2000); *see Holland v. Florida*, --- U.S. ---, 130 S.
Ct. 2549, 2560 (2010).  In the Second Circuit, equitable tolling should be applied only in "rare
and exceptional circumstances."  *Walker v. Jastremski*, 430 F.3d 560, 564 (2d Cir. 2005).
Equitable tolling may apply where the petitioner demonstrates that "extraordinary circumstances
prevented him from filing his petition on time" and that the petitioner "acted with reasonable
diligence throughout the period he seeks to toll."  *Smith v. McGinnis*, 208 F.3d 13, 17 (2d Cir.
2000) (per curiam).  A petitioner also must show that the extraordinary circumstances *prevented*
petitioner from filing a timely petition, which is accomplished by "demonstrat[ing] a causal
relationship between the extraordinary circumstances on which the claim for equitable tolling
rests and the lateness of his filing, a demonstration that cannot be made if the petitioner, acting
with reasonable diligence, could have filed on time notwithstanding the extraordinary
circumstances."  *Valverde v. Stinson*, 224 F.3d 129, 134 (2d Cir. 2000).

### i. Reliance on Jailhouse Lawyer

Walker concedes that he "made a very bad decision" by trusting a "jailhouse law clerk"
with respect to AEDPA's tolling provisions.  Dkt. 1 at 14.  But as Judge Amon previously
advised Walker, "ignorance of the law or reliance on jailhouse lawyers is not sufficient to
warrant equitable tolling."  Dkt. 3 at 4 (citing cases).  Courts in New York consistently have held
that reliance on a jailhouse lawyer, or even on the erroneous advice of a licensed attorney, does
not qualify as an extraordinary circumstance warranting equitable tolling.  *See, e.g.*, *Smith v.
McGinnis*, 208 F.3d 13 (2d Cir. 2000) (*pro se* status does not merit equitable tolling);
*Baldayaque v. United States*, 338 F.3d 145, 150–153 (2d Cir. 2003) (holding that attorney error
alone does not constitute extraordinary circumstances for purposes of equitable tolling); *Lizaide*

10

*v. Kirkpatrick*, 09-CV-5038(CBA), 2009 WL 4110296, at *2 (E.D.N.Y. Nov. 24, 2009) ("Ignorance of the law and lack of education are not sufficient grounds to warrant equitable tolling."); *Francis v. Miller*, 198 F. Supp. 2d 232, 235 (E.D.N.Y. 2002) (ignorance of the law and legal procedure is not so exceptional as to merit equitable tolling).

Moreover, Walker fails to show that his jailhouse lawyer's purportedly erroneous advice regarding the tolling of the limitation period *prevented* him from filing a timely petition. Although the contours of AEDPA's tolling provisions may be complicated, Walker was informed by his former appellate counsel that he had "one year from [May 25, 2008] to [file] his federal habeas corpus [petition]." Dkt. 1 at 13. Had Walker followed this advice, he would have filed this petition on time. Walker suggests that he followed bad advice from a "jailhouse law clerk," Dkt. 1 at 14, advice which apparently led him to pursue collateral relief in state court, but these applications served to toll the AEDPA clock and, therefore, did not prejudice Walker. Even if it is true that, as Walker states, the jailhouse lawyer erroneously advised Walker that the filing of a petition for state post-conviction relief restarted the one-year limitation period, Walker had ample time during the pendency of those petitions to determine the accuracy of that advice.

Accordingly, the Court finds that equitable tolling is not warranted based on Walker's purported reliance on the erroneous advice of a "jailhouse law clerk."

### ii. *Appellate Counsel's Delay*

Walker also argues that, because it took his appellate counsel 69 days to notify him of the Appellate Division's denial of leave to appeal his conviction, he was unable to petition for certiorari, and this purported inability to seek certiorari prevented him from timely filing the instant petition. *See* Dkt. 11, 13 at 1. However, Walker's alleged inability to petition for certiorari had no bearing on his ability to meet the one-year deadline for filing his habeas petition

11

because the one-year period did not begin to run until *90 days after* the Court of Appeals denied his direct appeal.[9]  Thus, even assuming Walker's counsel was 69 days late in notifying him of the Court of Appeals' denial, Walker still had more than a year, *i.e.*, one year and 21 days, within which to file his habeas petition.  Having notice that one's conviction has become final before the running of the limitation period even commences does not qualify as an "extraordinary circumstance."

Walker likewise fails to demonstrate that he acted with "reasonable diligence" with respect to the habeas petition throughout the entire time period he seeks to toll.  In determining whether a petitioner acted with reasonable diligence, the Court asks "did the petitioner act as diligently as reasonably could have been expected *under the circumstances?*"  *Nickels v. Conway*, 480 Fed. App'x 54, 57 (2d Cir. 2012) (citing *Baldayaque v. United* States, 338 F.3d 145, 153 (2d Cir. 2003)).  The succession of collateral applications filed by Walker in state court, *e.g.*, the *coram nobis* petition followed by the 440 Motion and related appeals, demonstrates that Walker had the opportunity and resources to consider and develop his claims regarding his state law remedies, yet failed to exercise the same degree of diligence with respect to the filing of the instant petition.  Indeed, the fact that Walker waited 249 days from the date his conviction became final before seeking a writ of error *coram nobis* in state court, Dkt. 4 at 1, also militates against a finding of reasonable diligence.[10]  *See Smith*, 208 F.3d at 17–18 (finding no

---

[9] Walker does not set forth as a ground for habeas relief his purported inability to petition for a writ of certiorari.

[10] That is not to say, however, that Walker is penalized for "failing to file early or to take other extraordinary precautions early in the limitations period."  *Hizbullahankhamon*, 255 F.3d at 76 n.9.  The fact that Walker delayed 249 days before seeking state remedies simply is another aspect of the "reasonable diligence" analysis.  Hence, even were this a case where extraordinary circumstances were present and where "the alleged extraordinary circumstances ceased early in the limitations period," the fact that Walker did not exercise "reasonable diligence in attempting to file *after the extraordinary circumstances began*," means that "the link of causation between

extraordinary or exceptional circumstances and no reasonable diligence where petitioner exhausted state remedies and then filed habeas petition 87 days after the state court denied collateral relief); *Hizbullahankhamon*, 255 F.3d at 75 (noting that petitioner failed to exercise reasonable diligence by waiting 250 days before filing first petition for state post-conviction review).

Walker's reliance on the alleged delay by his appellate counsel in notifying him of the Court of Appeals' denial of his direct appeal does not mitigate the lack of diligence in meeting the one-year deadline. As discussed, there is no causal connection between his appellate counsel's purported failure to timely notify him that the Court of Appeals denied leave to appeal and his failure to timely file the instant petition. "[O]nce the Court of Appeals' judgment became final, there were no further prerequisites or other legal impediments preventing [Walker] from filing a habeas petition." *Hamilton v. Warden of Clinton Correctional Facility*, 573 F. Supp. 2d 779, 781 (S.D.N.Y. 2008). Walker was aware of the denial of leave to appeal before the one-year limitation period began to run, and has failed to demonstrate reasonable diligence meriting equitable tolling. *See Hizbullahankhamon v. Walker*, 255 F.3d 65 at 75–76 (denying equitable tolling where petitioner argued he was deprived of access to legal materials at the outset of the running of limitations period, but regained access to legal materials 22 days later yet still waited "over 250 days before filing [his *coram nobis* motion]").

---

the extraordinary circumstances and the failure to file [timely] is broken, and the extraordinary circumstances therefore did not prevent timely filing." *Id.* at 75 (citing *Valverde v. Stinson*, 224 F.3d 129, 134 (2d Cir. 2000)). Thus, even more so than the petitioner in *Hizbullahankhamon*, Walker fails to establish that his appellate counsel's alleged delay *prevented* him from timely filing his habeas petition. Given that his counsel's purported delay occurred even *before* the limitations period began running, it cannot be plausibly said that, but for his appellate counsel's purported delay in notifying Walker that his conviction had become final, Walker would not have been late in filing his petition.

Relatedly, it is not the case that Walker missed the filing deadline by a matter of days. Under even the most generous calculation of time, which assumes that the time during the pendency of Walker's motion for leave to appeal the denial of his 440 Motion to the Court of Appeals should be tolled, Walker's petition still would be untimely by 29 days. Courts have declined to equitably toll the limitation period for petitions filed untimely by even one day. *See, e.g.*, *White v. Conway*, 07-CV-1175(GHL), 2011 WL 1315714, at *4 (N.D.N.Y. Jan. 18, 2011) (declining to equitably toll petition filed one day late and collecting cases); *Smith v. Conway*, 07-CV-7174(JGK), 2008 WL 2531194, at *3 (S.D.N.Y. June 24, 2008) ("the fact that the [petition] was only two days late is not itself a basis for equitable tolling"); *Ottenwarde v. United States*, 12-CV-6537, 2013 WL 1242632(JGK) (S.D.N.Y. Mar. 28, 2013) (declining equitable tolling where petition time-barred by two months).

### iii.   Actual Innocence

Lastly, the petition contains no facts or argument suggesting equitable tolling or another equitable exception based on a claim of actual innocence, and there is no evidence in the record or elsewhere supporting such a claim. The Second Circuit recognizes "an equitable exception to AEDPA's limitation period in extraordinary cases . . . in which the petitioner has made a credible and compelling showing of his actual innocence." *Rivas v. Fischer*, 687 F.3d 514, 552 (2d Cir. 2012); *see also Whitley v. Senkowski*, 317 F.3d 23, 25 (2d Cir. 2003) (holding that district court erred by dismissing on statute of limitations grounds and without further analysis a petition claiming actual innocence). Walker has not made such a claim or showing and the record supports no such claim. This finding is further supported by the fact that Walker presented no evidence in his defense at the trial.

Therefore, the Court finds no basis for equitably tolling AEDPA's one-year limitation period.

*          *          *

For the reasons set forth above, Walker has failed to establish his entitlement to equitable tolling of the one-year statute of limitation set forth in 28 U.S.C. § 2244(d)(1). Walker's petition, therefore, must be denied as time-barred. In any event, were the Court to reach the merits of Walker's petition, it still would be dismissed for the reasons set forth below.

II.   *Walker's Petition, If Not Time-Barred, Would be Dismissed on the Merits*

In his petition, Walker sets forth four bases for relief: (1) his post-arrest statement should have been suppressed; (2) the admission at trial of the fact that Walker had made an oral post-arrest statement violated his due process rights; (3) he was denied a fair trial when the trial court improperly instructed the jury on the elements of New York's depraved indifference murder; and (4) his appellate counsel was ineffective for failing to appeal the improper admission at trial of "falsified" evidence.

a.   *Standard of Review under 28 U.S.C. § 2254*

Section 2254 provides that a habeas corpus application must be denied unless the state court's adjudication on the merits "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," or "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d). "A state court 'adjudicates' a petitioner's federal constitutional claims 'on the merits' when 'it (1) disposes of the claim on the merits, and (2) reduces its disposition to

judgment.'" *Norde v. Keane,* 294 F.3d 401, 410 (2d Cir. 2002) (quoting *Sellan v. Kuhlman,* 261 F.3d 303, 312 (2d Cir. 2001)).

"Clearly established federal law 'refers to the holdings, as opposed to the dicta, of the Supreme Court's decisions as of the time of the relevant state-court decision.'" *Howard v. Walker,* 406 F.3d 114, 122 (2d Cir. 2005) (quoting *Kennaugh v. Miller*, 289 F.3d 36, 42 (2d Cir. 2002)).  A decision is "contrary to" established federal law if it either "applies a rule that contradicts the governing law set forth in" a Supreme Court case, or it "confronts a set of facts that are materially indistinguishable from a decision of [the Supreme Court] and nevertheless arrives at a result different from [its] precedent." *Penry v. Johnson,* 532 U.S. 782, 792 (2001) (internal quotation marks and citations omitted).  A decision is an "unreasonable application of" clearly established Supreme Court precedent if it "correctly identifies the governing legal rule but applies it unreasonably to the facts of a particular prisoner's case." *Id.* (internal quotation marks and citation omitted).

AEDPA establishes a deferential standard of review: "a federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly.  Rather, that application must also be unreasonable." *Gilchrist v. O'Keefe*, 260 F.3d 87, 93 (2d Cir. 2001) (quoting *Williams v. Taylor*, 529 U.S. 362, 411 (2000)).  The Second Circuit added that, while "[s]ome increment of incorrectness beyond error is required . . . the increment need not be great; otherwise, habeas relief would be limited to state court decisions so far off the mark as to suggest judicial incompetence." *Id.* (quoting *Francis S. v. Stone*, 221 F.3d 100, 111 (2d Cir. 2000)).  Finally, "if the federal claim was not adjudicated on the merits, 'AEDPA deference is not required, and conclusions of law and mixed findings of fact and conclusions of law are reviewed

16

*de novo*.'" *Dolphy v. Mantello*, 552 F.3d 236, 238 (2d Cir. 2009) (quoting *Spears v. Greiner*, 459 F.3d 200, 203 (2d Cir. 2006)).

     a.   *Improper Admission of Walker's Pretrial Written Statement*

Walker first alleges that the trial court denied him due process by admitting at trial his written post-arrest statements confessing to the shooting, which Walker claims were involuntary. Dkt. 1 at 6; Dkt. 11 at 7.  The gravamen of Walker's contention is that two police detectives lied at the pretrial hearing when they testified that they advised Walker of his *Miranda* rights and that he waived those rights before giving his written statement.  Dkt. 13 6–15.  Walker also argues that the detective witnesses gave conflicting testimony and were not otherwise credible, and that the court erred by admitting his written confession in violation of *Miranda*.  Dkt. 11 at 4–9. Walker's contentions are unavailing.

Factual findings of a state court are presumed correct.  *See* 28 U.S.C. §2254(e)(1).  This presumption "is particularly important when reviewing the trial court's assessment of witness credibility."  *Cotto v. Herbert*, 331 F.3d 217, 233 (2d Cir. 2003).  Walker bears "the burden of rebutting the presumption of correctness by clear and convincing evidence."  28 U.S.C. § 2254(e)(1).  AEDPA provides that habeas relief may be granted with respect to state court factual findings only if the state court made an "unreasonable determination of the facts in light of the evidence presented."  28 U.S.C. § 2254(e)(1).  Here, as in *Cotto*, where a witness "credibility clash" was "resolved by findings of the [judge] who observed the witnesses and found that "the People's evidence was credible," the state court decision is subject to an "extremely narrow scope of review."  *Cotto*, 331 F.3d at 233.

Walker has not established by clear and convincing evidence that the trial court's admission into evidence of his written statement was an "unreasonable determination of the facts

in light of the evidence presented."  28 U.S.C. § 2254(d)(2), (e)(1).  There was ample evidence and testimony adduced at the suppression hearing from which to conclude that Walker was read, and waived, his *Miranda* rights prior to making his written confession, and therefore that his statement was made voluntarily and was properly admitted into evidence.  *See, e.g.*, Dkt 7-2 at 29–38.  Walker points to inconsistences in the testimony of two police detectives who interrogated him, *e.g.*, regarding which detectives were in the room during the interrogations and when, *see* Dkt. 7-3 at 230–31, as proof that the detectives lied about Walker agreeing to speak to the detectives after being *Mirandized*.  *See* Dkt. 13 at 6–15.  However, the judge who presided over the suppression hearing made these credibility determinations and resolved the inconsistencies based on her observations of the witnesses and their demeanor, as well as her evaluation of the accuracy and reliability of their testimony when compared with the other evidence presented at the hearing.  Notably, this evidence included the statement, which was signed by Walker.  The Appellate Division affirmed these findings on the merits.  There is no basis in the record upon which to conclude that those findings were "unreasonable" factual determinations.  28 U.S.C. §2254(d)(2).  Nor do any of the inconsistencies in the testimony of the prosecution witnesses cast significant doubt on whether Walker's statement was voluntary.

Accordingly, Walker's claim that his written post-arrest statement was improperly admitted at trial is without merit.

> b.  *Improper Admission of Testimony Regarding Walker's Pretrial Oral Statement*

Walker next contends that the trial court improperly permitted a detective to testify at trial about the *fact* that Walker had made a post-arrest oral statement, where the statement itself was not admitted pursuant to the trial court's earlier ruling that the statement was inadmissible.

18

Dkt. 1 at 7; *People v. Walker*, 45 A.D.3d 878, 878 (2d Dep't 2007) (noting trial court's suppression of Walker's oral statement).[11]  Walker's contention is without merit.

The Appellate Division did not err when it denied Walker's appeal on the grounds that (1) the statement should not have been suppressed in the first place; (2) Walker voluntarily made the statement and, therefore, testimony about the *fact* of him having made the statement did not violate his privilege against self-incrimination; and (3) the content of his oral statement was not introduced.  *See Walker*, 45 A.D.3d at 878.  Furthermore, even if the testimony was improper, Walker does not demonstrate any prejudice arising from the mere reference to the fact that he made a statement.  Indeed, Walker's written statement, in which he confessed to the crime, was admitted at the trial.  Thus, any reference at trial to the fact that Walker had made an oral statement, without revelation of the content of such statement, would be harmless error.  *See Parsad v. Greiner*, 337 F.3d 175, 185–186 (2d Cir. 2003).  In sum, the admission of testimony about Walker's statement was not error.  And neither the Appellate Division nor the trial court

---

[11] Notably, on appeal, the Appellate Division found, *inter alia*, that "there was no basis for suppressing the oral statement."  *Walker*, 45 A.D.3d at 878.  In fact, as Respondent concedes, the trial court's ruling on the admissibility of Walker's oral statement "was not a paradigm of clarity."  Dkt. 6 at 14; Dkt. 3-4 at 239 ("As to the oral statement, although I have indicated that I don't have so many problems with it.  I believe that [Detective 1] did apprise [Detective 2] on the matter.  [Detective 2] knew what was said.  But [Detective 2] went in there not knowing what the matter was.  So I would deny the oral statement and deny the suppression on the written statement.").

Due to this lack of clarity, it is impossible to conclusively determine whether the statement was suppressed on federal grounds, such as *Miranda*, which would permit the Court to review the claim on the merits were the claim not otherwise procedurally barred, or some other adequate and independent state ground, which would bar the Court's review.  *See Coleman v. Thompson*, 501 U.S. 722, 729–33 (1991); *Richardson v. Greene*, 497 F.3d 212, 218 (2d Cir. 2007).  However, based on the trial court's ruling, *see* Dkt. 6 at 14, in which it refers to the inconsistent testimony of the two detective-witnesses regarding the oral statement, it appears the trial court suppressed the evidence based on the unreliability of the statement itself, and not on the basis that it was involuntarily obtained in violation of *Miranda*.

unreasonably applied federal law or made an unreasonable determination of facts with respect to this testimony.

      c.   *Improper Jury Instruction Regarding Depraved Indifference Murder*

Walker next argues that the trial court erred by improperly instructing the jury regarding the legal elements of depraved indifference murder.  Dkt. 1 at 9.  Walker's argument is based on the change in New York's law of depraved indifference murder that occurred after his conviction but during the pendency of his direct appeal.  *See* Dkt. 1 at ECF 27–30; *People v. Martinez*, 20 N.Y.3d 971, 975–76 (2012) (Smith. J., concurring) (discussing development of New York's depraved indifference murder jurisprudence).

At the time of Walker's trial, the elements for depraved indifference murder were governed by the New York Court of Appeals' decision in *People v. Register*, 60 N.Y.2d 270 (1983), which held that there was no mens rea element beyond recklessness for the crime of depraved indifference murder.  *Id.* at 278 (the state legislature did not intend the concept of depraved indifference to "function as a *mens rea* element, but to objectively define the circumstances which must exist to elevate a homicide from manslaughter to murder").  Consistent with *Register*, the jury in Walker's trial was given the following instruction regarding the depraved indifference murder count:

> Murder in the second degree. Under our law, a person is guilty of murder in the second degree when, under circumstances showing a depraved indifference to human life, he recklessly engages in conduct which creates a grave risk of death to another person, and thereby causes the death of that person.

> According to the law, a person acts recklessly with respect to another person's death when that person engages in conduct which could create the substantial and unjustifiable and grave risk that another person's death will occur, and when he is aware of and consciously disregards that risk, and when that risk is of such nature and degree that disregarding it is a gross deviation from the standard of conduct a reasonable person would observe in the same situation.

A crime which is considered reckless is generally regarded as less serious and blameworthy than a crime committed intentionally. But when reckless conduct is engaged in under circumstances showing a depraved indifference to human life, the law regards that conduct as so serious, so egregious, as to be the equivalent of intentional conduct.

Conduct showing a depraved indifference to human life is much more serious and blameworthy than conduct which is merely reckless. It is conduct that, beyond being reckless, is so wanton, so deficient in moral sense and concern, so devoid of regard for the life or lives of others, as to equal in blameworthiness as intentional conduct which produces the same result.

In determining whether the defendant's conduct showed a depraved indifference to human life, you the jury would have to decide whether the circumstances as you find they existed surrounding his reckless conduct, when objectively viewed made that conduct so uncaring, so callous, so dangerous and so inhuman as to demonstrate an attitude of total and utter disregard for the life or lives of the persons endangered.

Dkt. 9-3 at ECF 84–86.  Walker's trial counsel did not object to that instruction, which correctly stated the law at the time under *Register*.

After Walker's conviction and while his appeal was pending, the Court of Appeals decided *People v. Feingold*, 7 N.Y.3d 288, 294 (2006), which was the culmination of a series of decisions eroding the "objective circumstances" standard of *Register* and moving in the direction of requiring a mens rea element for depraved indifference murder.  *See People v. Martinez*, 20 N.Y.3d 971, 975–76 (2012) (Smith. J., concurring) (discussing development of New York's depraved indifference murder jurisprudence).[12]  In *Feingold*, the Court of Appeals explicitly

---

[12] Although Walker relies on *People v. Hafeez*, 100 N.Y.2d 253 (2003), to demonstrate that the law changed before his conviction, this reliance is misplaced.  *Hafeez* did not change New York's law of depraved indifference.  It merely portended the change that was to come.  That change only occurred with *Feingold*.  *See Martinez*, 20 N.Y.3d at 976–77 (Smith. J., concurring) ("our new standard, as articulated in *Feingold*, should apply to cases brought on direct appeal") (internal citations omitted).  Indeed, in a certified question from the Second Circuit, the New York Court of Appeals instructed that "a series of decisions [including *Hafeez*] incrementally pointed the law in a different direction, culminating in our explicit overruling of *Register* [60 N.Y.2d 270 (1980)] and *Sanchez* [98 N.Y.2d 373 (2002)], in *Feingold*."  *Policano v. Herbert*, 7 N.Y.3d 588, 595 (2006).

reversed *Register*, and established that "depraved indifference to human life is a culpable mental state" that had to be proved as an element of depraved indifference murder. *Feingold*, N.Y.3d at 294. The court explained that "depraved indifference is best understood as an utter disregard for the value of human life—a willingness to act not because one intends harm, but because one simply doesn't care whether grievous harm results or not[.]" *Id.* at 296 (internal quotations omitted). The court also reaffirmed its earlier conclusion from *People v. Gonzalez*, 1 N.Y.3d 464 (2004), that depraved indifference is a state of mind that is inconsistent with an intent to kill. *Id.* at 293. Hence, after *Feingold*, "depraved indifference murder convictions may no longer be upheld where the evidence of intent to kill is compelling." *Martinez*, 20 N.Y.3d at 976.[13]

Although Walker did not object to the depraved indifference murder instruction given at trial, he challenged it on direct appeal, arguing that the failure to give a jury instruction that comported with *Feingold*, which had not yet been decided at the time of his trial, constituted a due process violation. Dkt. 10-2 at ECF 47–49. The Appellate Division, however, did not address the merits of this argument, instead finding that it was procedurally barred because of Walker's failure to preserve his objection at trial. *Walker*, 45 A.D.3d at 878. The Appellate Division denied Walker's appeal in 2007. At that time, there was no Court of Appeals decision regarding the applicability of the changed standard established in *Feingold* to cases on direct appeal. Walker's conviction became final in May 2008. *See People v. Walker*, 10 N.Y.3d 772 (2008).

---

[13] Several months after its decision in *Feingold*, in November 2006, the Court of Appeals decided *Policano*, in which it held, in response to a question certified by the Second Circuit, that the change in the law regarding the mens rea element of depraved indifference murder that was definitively established in *Feingold* does not apply retroactively to convictions challenged on collateral review. *Policano*, 7 N.Y.3d at 603–04. Although Walker sought collateral review of his convictions by filing a *coram nobis* petition and a 440 Motion, he did not raise the jury charge issue in either of those petitions. *Id.*

Six months later, in November 2008, the Court of Appeals addressed the applicability of the change in the law regarding the mens rea element of depraved indifference murder to direct appeals in *People v. Jean-Baptiste*, 11 N.Y.3d 539 (2008).  In *Jean-Baptiste*, the Court of Appeals distinguished its prior holding in *Policano v. Herbert*, 7 N.Y.3d 588 (2006), and held that, although intervening changes of law should not be applied to cases on post-conviction collateral review, they *should* be applied to cases where the defendant's conviction is still pending on direct appeal and thus not yet final.  *Id.* at 543 (although intervening changes in law "should not be applied on collateral review to defendants whose convictions became final prior to our new interpretation of the law of depraved indifference murder" "that is not the case here, where defendant's conviction is still not final").

Thus, the history of Walker's case coincidentally is interwoven with the evolution of the law on depraved indifference murder: his conviction occurred before the change in the mens rea standard established by *Feingold*; his appeal was pending when *Feingold* was decided; and his conviction became final before the Court of Appeals decided in *Jean-Baptiste* that the *Feingold* standard should be applied to cases pending on appeal.  While this timing might suggest that Walker should benefit from the intervening change in the law regarding depraved indifference murder, that is not the case.  As discussed below, Walker's claim fails because he did not preserve his claim when he challenged only the depraved indifference murder instruction given to the jury and not the sufficiency of the evidence supporting his conviction, which is a prerequisite for retroactive application of the *Feingold* mens rea standard.  *People v. Jean-Baptiste*, 11 N.Y.3d 539, 542 (2008) ("We hold that the standard as articulated in *Feingold* should apply to cases brought on direct appeal *in which the defendant has adequately challenged*

*the sufficiency of the proof* as to his depraved indifference murder conviction.") (emphasis added).

> i.    *Applicable Standard for A Federal Constitutional Violation Based on Purportedly Erroneous State Court jury Instruction*

The propriety of a state court's jury instructions ordinarily is a matter of state law that does not raise a federal constitutional issue. *See Cupp v. Naughten*, 414 U.S. 141, 146 (1973); *United States ex rel. Smith v. Montaye*, 505 F.2d 1355, 1359 (2d Cir. 1974). Further, even if the jury instruction violated state law, no habeas relief is available unless the error also violated the petitioner's federal rights. *See Estelle v. McGuire*, 502 U.S. 62, 71–72 (1991) (state law error regarding jury instruction is not itself a basis for habeas relief).

Jury instructions violate due process if they "fail[] to give effect to [the] requirement" that the prosecution must prove every element of a charged offense beyond a reasonable doubt." *See Middleton v. McNeil*, 541 U.S. 433, 437 (2004) (per curiam). Also, "[a] jury charge violates due process when there is a reasonable likelihood that the jury has applied the challenged instruction in a way that violates the Constitution." *Cortijo v. Bennett*, 422 Fed. App'x 12, 13 (2d Cir. 2011) (citing *Middleton*, 541 U.S. at 437). A petitioner "making a claim of improper jury instructions faces a substantial burden" to establish that "the ailing instruction by itself so infected the entire trial that the resulting conviction violat[ed] due process." *Devalle v. Armstrong*, 306 F.3d 1197, 1200-01 (2d Cir. 2002) (internal alterations and citations omitted).

> ii.   *Walker Was Not Entitled to Retroactive Application of the Feingold Mens Rea Standard*

Walker has failed to demonstrate that he was entitled, under New York law, to have the jury instructed pursuant to the standard set in *Feingold*. While the Court of Appeals in *Jean-Baptiste* held that the intervening change in law with regard to the mens rea requirement for

24

proving depraved indifference murder should apply to cases pending on direct appeal when *Feingold* was decided—which was the posture of Walker's case—it was not erroneous for the Appellate Division to deny Walker's appeal.  First, the Appellate Division correctly concluded that, having failed to object to the depraved indifference instruction at trial, Walker failed to preserve that claim for appeal.[14]  As noted in the concurrence in *Martinez*, with respect to murder cases, "[t]he general rule that [the Court of Appeals] will review claims only where they have been properly preserved for review attains special importance in this context.  The preservation rule, like our retroactivity holding in *Policano*, serves to prevent the unnecessary overturning of convictions of defendants who committed vicious crimes but who may have been charged and convicted under the wrong section of the statute."  *Martinez*, 20 N.Y.3d at 977 (Smith, J., concurring) (citing *Suarez*, 6 N.Y.3d at 217).  Here, as discussed *infra*, there is no basis for arguing that Walker was charged or convicted of the wrong crime.

Second, even if Walker had preserved his claim with respect to the jury instruction, it would have been denied because Walker did not challenge the sufficiency of the evidence used to convict him of depraved indifference murder.  In *Jean-Baptiste*, the Court of Appeals held that

---

[14] In finding the claim unpreserved, the Appellate Division necessarily relied on New York's preservation rule, which constitutes an "adequate and independent" state ground precluding federal habeas review.  A state ground is adequate when it is firmly established and regularly followed.  *See Richardson v. Greene*, 497 F.3d 212, 219 (2d Cir. 2007) ("[I]n accordance with New York case law, application of the state's preservation rule is adequate—*i.e.*, firmly established and regularly followed").  And a procedural rule is considered independent when the "state court must actually have relied on the procedural bar as an independent basis for its disposition of the case" by "clearly and expressly stat[ing] that its judgment rests on a state procedural bar."  *Harris v. Reed*, 489 U.S. 255, 261–62, 263 (1989) (internal quotations omitted).  Both of those requirements are satisfied by the Appellate Division's reliance on New York's preservation rule.  *See, e.g., Richardson v. Greene*, 497 F.3d 212, 218 (2d Cir. 2007) ("application of the state's preservation rule is adequate—i.e., firmly established and regularly followed").  Thus, the Appellate Division's reliance on New York's preservation rule in denying Walker's appeal constitutes an adequate and independent state ground further barring the Court's review of Walker's claim.

"the standard as articulated in *Feingold* should apply to cases brought on direct appeal in which the defendant *has adequately challenged the sufficiency of the proof as to his depraved indifference murder conviction*."  11 N.Y.3d at 542 (emphasis added); *Martinez*, 20 N.Y.3d at 977 (Smith, J., concurring) ("*Jean-Baptiste's* qualifying language, 'in which the defendant has adequately challenged the sufficiency of the proof,' is a critical part of our post-*Sanchez* jurisprudence[.]").[15]  Unlike the defendant in *Jean-Baptiste*, Walker did not claim on appeal that the evidence was insufficient to prove that he was guilty of depraved indifference murder as re-defined by *Feingold*.[16]  Thus, Walker's assertion that he should have received a different jury instruction at trial, without adequately challenging the sufficiency of the proof of conviction, is simply not enough.[17]

Indeed, given the evidence supporting his conviction, Walker could not have successfully challenged the sufficiency of the evidence even under a *Feingold* standard.  *See Middleton*, 541 U.S. at 437 (due process violated if jury instructions fail to give effect to the requirement that every element of a charged offense is proved beyond a reasonable doubt).  The overwhelming evidence at trial established that Walker committed the "quintessential" depraved indifference murder, *i.e.*, "lacking the intent to kill (but oblivious to the consequences and with depraved indifference to human life) [Walker shot] into a crowd or otherwise endanger[ed] innocent

---

[15] *People v. Sanchez*, 98 N.Y.2d 373 (2002), was the final case to uphold the *Register* view of depraved indifference.  In *Sanchez*, the Court of Appeals upheld a conviction of depraved indifference murder, finding that the evidence that the defendant shot the victim "within not more than 18 inches of his body and striking him in the chest, would permit a jury rationally to conclude that defendant demonstrated an indifference to human life so depraved as to be deserving of the same punishment as intentional murder."  *Id.* at 384.

[16] As previously discussed, Walker did not challenge at trial, nor could he have collaterally attacked, the depraved indifference murder instruction.  *Policano*, 7 N.Y.3d at 604.

[17] Walker's failure to challenge the sufficiency of the evidence supporting his conviction in state court proceedings also renders that precise claim unpreserved for purposes of federal habeas review.  *See* 28 U.S.C. § 2254(b)(1)(A) (requiring exhaustion of state remedies with respect to each claim).

bystanders." *See People v. Feingold*, 7 N.Y.3d at 296; *People v. Payne*, 3 N.Y.3d 270, 271 (2004). Because the evidence that supported Walker's conviction would have established his guilt of depraved indifference murder under the *Feingold* standard, he cannot establish a due process violation. *Devalle*, 306 F.3d at 1201 (habeas petitioner claiming a violation of due process based on an improper jury charge must show that "the ailing instruction by itself so infected the entire trial that the resulting conviction violat[ed] due process").

Thus, Walker's conviction was properly affirmed on appeal because the depraved indifference murder instruction given at his trial correctly stated the law at that time, and he was not entitled to the subsequent change in the law, notwithstanding the pendency of his direct appeal at the time of the change. And in any event, Walker's conviction was supported by ample evidence that he committed depraved indifference murder under the *Feingold* standard.

        iii.    *Due Process Violation for Not Applying Intervening Change in Law*

Even assuming *arguendo* that the depraved indifference murder instruction given at Walker's trial was erroneous, *i.e.*, it should have included the *Feingold* mens rea requirement, and that the Appellate Division erroneously denied his appeal, Walker still would not be entitled to habeas relief unless the error also violated his federal rights. *Estelle*, 502 U.S. at 71–72 (state law error regarding jury instruction is not itself a basis for habeas relief). Here, the issue is whether Walker's right to due process was violated by the Appellate Division's decision not to apply the *Feingold* mens rea standard in his direct appeal. Walker was not denied due process.

Under AEDPA, a petitioner is entitled to federal habeas relief if the state court proceedings "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d)(1). The Supreme Court has not spoken on the issue of whether a state

violates a defendant's federal due process rights by not applying an intervening change in the law that occurred while the defendant's case was pending direct appeal. *See Guzman v. Greene*, 425 F. Supp. 2d 298, 315 (E.D.N.Y. 2006). Accordingly, given the absence of established Supreme Court law on this issue, the Court has no basis for concluding that the Appellate Division's denial of Walker's challenge to the depraved indifference murder instruction given at his trial based on an intervening change in the law was an unreasonable application of federal law as announced by the Supreme Court.

Federal courts in this circuit have not yet addressed the retroactivity of *Feingold* and its kin to state court cases that still were pending on direct appeal when *Feingold* was decided. *See Guzman*, 425 F. Supp. 2d at 316 (also noting that "[t]he Supreme Court has never addressed this issue" of whether "the failure to retroactively apply a new criminal rule of state law would violate clearly established Supreme Court law"), *aff'd* 337 Fed. App'x 27, 29 (2d Cir. 2009); *Melendez v. Kirkpatrick*, 742 F. Supp. 2d 336, 351 (W.D.N.Y. 2010).

Judge Frederic Block addressed a similar issue to the one presented here in *Guzman*. The defendant in *Guzman* had been convicted in state court of depraved indifference murder, but the evidence introduced at trial showed that the defendant had intentionally killed the victim. As here, the defendant's case was pending on direct review when *Feingold* was decided. Judge Block found that "the Court would be compelled to grant Guzman's habeas petition if the law applicable during direct review [*i.e.*, *Feingold*] were controlling." *Guzman*, 425 F. Supp. 2d at 313. Judge Block explained that he would have granted the writ because, under the then-established case law, "there was insufficient evidence to support [the Appellate Division's] finding that the petitioner was guilty of depraved-indifference murder." *Id.* Judge Block then, without the benefit of *Jean-Baptiste*, which was subsequently decided, analyzed whether the new

depraved indifference murder case law applied retroactively on direct appeal, and concluded that New York retroactivity rules would not require that new case law, such as *Suarez*, *Hafeez*, *Gonzalez*, and *Payne*, apply to Guzman.  *Id.* at 315–16.  Judge Block then reached the same issue as presented here: "whether the failure to retroactively apply [on direct appeal] a new criminal rule of state law would violate clearly established Supreme Court law."  *Id.* at 316.  Judge Block found that it would not, as the Supreme Court had not addressed the issue, and therefore AEDPA barred the granting of the writ.  *Id.* at 317.

Thus, the unanswered question that remains in the Second Circuit and elsewhere is whether a state violates a defendant's federal due process rights where the state appellate court does not apply a change in state law that occurs during direct review of the conviction.[18]  All of the case law identified by the Court only addresses the issue of whether such changes in law are retroactively applicable on *collateral review*, not direct review.  *See, e.g.*, *Henry v. Ricks*, 578 F.3d 134, 139–40 (2d Cir. 2009) ("The question whether, or under what circumstances, due process requires that a new interpretation of a criminal statute by a state's highest court be applied retroactively on *collateral review* is one of first impression in this Circuit.") (emphasis added); *Fiore v. White*, 531 U.S. 225, 226 (2001) ("We granted certiorari in part to decide when, or whether, the Federal Due Process Clause requires a State to apply a new interpretation of a state criminal statute retroactively to cases on *collateral review*.") (emphasis added).  Hence, as

---

[18] The Supreme Court has addressed similar questions regarding new *federal* law, such as whether the federal rule announced in *Batson v. Kentucky*, 476 U.S. 79 (1986), should be applied "to litigation pending on direct state or federal review or not yet final when *Batson* was decided." *Griffith v. Kentucky*, 479 U.S. 314, 317 (1987).  There, the Court answered in the affirmative and held that "a new rule for the conduct of criminal prosecutions is to be applied retroactively to all cases, state or federal, pending on direct review or not yet final . . . ."  *Id.* at 328.  Additionally, the New York Court of Appeals has held it is not constitutionally required to retroactively apply new state rules to cases pending on direct review.  *People v. Mitchell*, 80 N.Y.2d 519 (1992).  But the precise question here remains unanswered in the Second Circuit and, more aptly, by the Supreme Court.

Judge Block concluded in *Guzman*, this Court has no basis to find that the Appellate Division's decision in Walker's case was an unreasonable application of clearly established federal law because the Supreme Court has not spoken on this issue. [19]

Even were the Court to conclude that the Appellate Division's decision not to apply the intervening change in the law to Walker's case violated due process, that error would be harmless given that the evidence was sufficient to prove that Walker acted with the requisite depraved indifference mens rea under *Feingold*. *See Chapman v. California*, 386 U.S. 18, 23–24 (1967); *Fahy v. State of Connecticut*, 375 U.S. 85, 86–97 (1963).

Under the facts of Walker's case, it reasonably can be inferred that the jury found that the necessary depraved indifference mens rea was proven beyond a reasonable doubt. *See Feingold*, 7 N.Y.3d at 295, 297 (finding that evidence could permit the inference of depraved indifference mens rea). Indeed, Walker "might well be said to have acted with the mens rea of depraved indifference" because "the factfinder simply announced a guilty verdict." *Id*. at 295.

      iv.   *Walker's Conduct Constitutes Depraved Indifference Murder*

Unlike in *Jean-Baptiste*, *Martinez*, *Payne*, *Suarez*, and the other related cases in which the evidence strongly supported an intentional murder conviction, the evidence here is paradigmatic of the nature of depraved indifference murder. Walker's case does not fall into the category of cases that no longer qualify for depraved indifference murder convictions. The evidence showed that Walker and his accomplice indiscriminately fired their weapons into the entrance of a nightclub, which demonstrates Walker's "utter disregard for the value of human life—a willingness to act not because one intends harm, but because one simply doesn't care

---

[19] Judge Block specifically noted that "[s]ince there is no Supreme Court holding addressing the issue of whether the states must retroactively apply a new criminal rule of state law, it cannot be concluded under AEDPA that the Appellate Division's rejection of Guzman's insufficiency claim was contrary to clearly established Supreme Court precedent." *Guzman*, 425 F. Supp. 2d at 317.

whether grievous harm results or not." *Id.* at 296 (explaining depraved indifference mens rea). Unlike those typical "one-on-one shooting" cases in which murder convictions were overturned (such as *People v. Suarez*, 6 N.Y.3d 202 (2005), *Jean-Baptiste*, and *Martinez*), the evidence here did not strongly indicate intent to kill, but rather strongly demonstrated that the killing occurred under circumstances evincing depraved indifference to life which, like any other mens rea, may be proved by circumstantial evidence. *See id.* at 296–97 (noting that a case may state a "'quintessential' case of depraved indifference murder [where] the circumstantial proof of depraved indifference would be compelling"); *see also People v. Jernatowski*, 238 N.Y. 188, 192 (1924) ("[W]hen the defendant fired two or more shots into the house where he knew there were human beings he committed an act which the jury certainly could say was imminently dangerous and which evinced a wicked and depraved mind regardless of human life and which amply supplied the evidence of malice and felonious intent"); *People v. Fenner*, 61 N.Y.2d 971 (1984) (defendant fired into a fleeing crowd); *People v. Russell*, 91 N.Y.2d 280 (1988) (defendant shot and killed an innocent bystander during a gun battle).

Accordingly, Walker's petition with respect to his claim that he was denied due process because an erroneous depraved indifference murder jury charge was given is denied.

### d. *Ineffective Assistance of Appellate Counsel*

Walker lastly argues that his appellate counsel's performance was constitutionally defective because counsel failed to appeal his conviction on the ground that it was obtained at least in part by "falsified evidence." Dkt. 1 at 4. Although Walker previously claimed ineffective assistance of appellate counsel in his writ of error *coram nobis* petition, the basis for his claim there was that appellate counsel failed to raise his *Brady* and *Rosario* claims to the Appellate Division, not that his appellate counsel failed to appeal the admission of "falsified

evidence" at his trial.  Dkt. 1 at 4, 10.  Because Walker now presents a new theory of why his appellate counsel was ineffective, Walker's claim has not been previously "fairly presented" to the state courts in a manner "such that the state court had a fair opportunity to act."  *Galdamez v. Keane*, 394 F.3d 68, 73 (2d Cir. 2005) (citation omitted).  Walker's claim therefore is unexhausted and the Court is procedurally barred from granting relief with respect to the claim. *See* 28 U.S.C. § 2254(b)(1)(A) ("An application for a writ of habeas corpus . . . shall not be granted unless it appears that the applicant has exhausted the remedies available in the courts of the State.").  Walker concedes that he did not exhaust this claim.  Dkt. 1 at 11.

However, because Walker's petition thus presents both exhausted and unexhausted claims, it constitutes a "mixed" petition, *Pratt v. Greiner*, 306 F.3d 1190, 1197 (2d Cir. 2001), and the Court in its discretion may deny the petition, including the unexhausted claims, on the merits.  28 U.S.C. § 2254(b)(2) ("An application for a writ of habeas corpus may be denied on the merits, notwithstanding the failure of the applicant to exhaust the remedies available in the courts of the State."); *see Jelinek v. Costello*, 247 F. Supp. 2d 212, 262–63 (E.D.N.Y. 2003) (discussing discretionary denial of habeas petition on the merits).

Walker's ineffective assistance of appellate counsel claim is without merit.  To establish that his appellate counsel was ineffective, Walker must show that his counsel's conduct "fell below an objective standard of reasonableness" and that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland v. Washington*, 466 U.S. 668, 688, 694 (1981).

 Walker's petition does not identify the "falsified evidence" that purportedly was presented to the jury.  Walker simply asserts that "defense counsel objected to the admission of into evidence [sic].  The jury specifically requested to view this evidence and therefore took it

32

into consideration as part of their decision of guilt." Dkt. 1 at 10.  The record reflects that the jury requested numerous pieces of evidence and testimony, including exhibits, charts, the *Miranda* sheet, and police detective and other witness testimony.  *See* Dkt. 9-3 at 693.  Yet Walker fails to identify which item(s) of evidence was allegedly falsified, and thus presents no basis to determine the validity of his assertion.  In addition, Walker's petition fails to show how appellate counsel could have shown from the record on appeal that any such evidence was falsified, or how his claim of the falsified evidence, even if proved, would have affected the outcome of his appeal.

Accordingly, Walker's claim regarding the ineffectiveness of his appellate counsel is denied.

*CONCLUSION*

For the reasons set forth above, the petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 is dismissed as untimely under 28 U.S.C. § 2244(d)(1).  Even were the petition not time-barred, the claims Walker asserts are either procedurally barred, without merit, or both.

Walker is denied a certificate of appealability, as he has failed to make a "substantial showing of the denial of a constitutional right."  28 U.S.C. § 2253(c)(2); *see Middleton v. Att'ys Gen.*, 396 F.3d 207, 209 (2d Cir. 2005) (petitioner has not shown that "reasonable jurists could debate whether . . . the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further").  Additionally, the Court certifies pursuant to 28 U.S.C. § 1915(a)(3) that any appeal from this Order would not be taken in good faith, and, therefore, *in forma pauperis* status is denied for purpose of an appeal. *Coppedge v. United States,* 369 U.S. 438, 444–45 (1962).

SO ORDERED:

/s/ Pamela K. Chen
PAMELA K. CHEN
United States District Judge

Dated: July 2, 2013
        Brooklyn, New York

34